See *The People* v. *Eckford*, 7 Cow. 535.

THE PEOPLE *v.* HAYNES, 14 Wend. 546.

In S. Ct. 11 id. 557.

*Indictment for obtaining Goods under False Pretences.*

INDICTMENT under the statute for obtaining goods by *false pretences.* Five different false pretences were set out in the indictment, as the representations by means of which he obtained the goods ; each of which was negatived in the indictment. On the trial, it appeared from the evidence of one of the prosecutors, from whom the goods were obtained, that he had known the accused for about 18 months, and had sold him goods at three different times to the amount of $1,500, previous to the purchase now in question, for which he had paid ; that the last credit for $800 fell due and was punctually paid about three weeks before the 9th of November, 1833, when this sale took place. On that day Haynes selected the goods set forth in the indictment, which were packed in a box and sent on board the steamboat for Providence by his order, addressed to him on the outside, "Charles Haynes, Boston ;" and a receipt taken therefor from the agent or clerk, and which was brought back to the prosecutor, expressing that the box described in the receipt, was "to be transported in the said boat to Providence, and there to be delivered to Boston waggoners, or order, upon application on board of the said boat." The mate of the steamboat testified that when the boat arrives at Providence, they immediately deliver the goods to a Boston waggoner, who takes them to Boston, and there distributes them according to the

30

marks and addresses; they do not require the receipt or bill of lading to be surrendered before the delivery of the goods; they are delivered without asking for or requiring the receipt. The prosecutor however further testified that after the goods were sent on board of the steamboat, and on the same day, he learnt that Haynes had had a note protested, and determined to send the receipt to the steamboat and get the goods back.   Before doing so, however, Haynes came into the store of the firm, and the prosecutor told him they could not deliver the goods, as they had heard that he had a note protested.   Haynes denied this, and in answer to inquiries, said "that he was worth from nine to ten thousand dollars; that he was not embarrassed, and was able to pay all that he owed ; that he had no endorser, and added that he had never endorsed but one note in his lifetime, and that was more than a year ago.   The prosecutor then observed that if these representations were true, and H. would on his return, immediately send him a statement of his affairs, he would deliver *the goods*: and accordingly handed to him the receipt and invoice, and took his note therefor, amounting to $657. The above were the representations set out and negatived in the indictment as the *false pretences*.   Evidence was given to show that Haynes in December, after the purchase, had said to one of his creditors, " that if he did *know he was insolvent*, when he made the purchase, he was not bound to tell it; and admitted that he had been insolvent for one or two years, but for the last year had been growing much worse.   His admissions to others that he was insolvent at the time, were also fully proved.   The jury found the prisoner guilty, and the charge of the recorder having been excepted to, a bill of exceptions was tendered and signed ; and the recorder having certified that there was so much doubt in the case as to render it expedient to take the judgment of the Supreme Court thereon, the District Attorney, pursuant to the provisions of the 2 R. S., 736, sued a certiorari, removing it to that court accordingly.

The opinion of the Supreme Court was delivered by Nelson, Ch. J., who states the following, as the only points material to be noticed.

1. Was the delivery of the property on board the steam-

boat Boston, *before the false pretences of the prisoner*, so complete in judgment of law, as to repel and disprove the allegation in the indictment, that it was delivered to him upon the faith of them ?

2. Is it necessary to prove *all* the pretences laid in the indictment as having induced the delivery of the goods, and which are negatived, to be false, in order to authorize a conviction ? And

3. Must the jury be satisfied that the pretences proved to be false, were the *sole* and *only* inducement to the credit or delivery ?

As to the first, he says : " We entertain no doubt that C. A. and Co. (the vendors) had a right to resume the actual possession and control of the goods at the time they became alarmed about the credit of the prisoner, and held the interview with him in which he put forth the false pretences charged ; and having asserted such a determination, the goods should be deemed in judgment of law, under their control at the time. The delivery was incomplete and conditional ; the invoice had not been delivered, nor the security for the purchase money given, and the receipt from the master of the boat, or bill of lading, was still in their hands."

2. " The case of *The People* v. *Stone*, 9 Wend. 182, decides that it is necessary for the pleader, in drawing an indictment under this statute, to negative specifically, *all* the false pretences *relied on* to sustain the indictment and convict the accused. The same point had been before determined in the case of *The King* v. *Perrott*, 2 Maule and Selw. 379. Neither of these cases, however, decides, that it is indispensable to establish, by proof, the falsity of *each* pretence thus negatived ; but are authorities, I think, for a contrary conclusion."

3. " From the view we entertain of the law on this point, the case was put to the jury by the court below more favorably to the prisoner than can be sustained. The recorder charged that if *some* of the pretences in the indictment were false, and the goods were obtained *solely by means of those pretences*, they, C. A. and Co., believing them to be true, the prisoner was guilty."

Now, we understand the rule to be, that if the pretences

proved to be false, had a *material effect* in procuring the credit or inducing the party defrauded to give up his property, it is sufficient. All the opinions in *The King* v. *Perrott*, concede this principle ; for they suppose the pretences may be, what is most usually the fact, a mixture of truth and falsehood ; and decide that the false pretences should be negatived ; that the others, need not be ; and that upon proof of the false ones, a conviction might or would follow. The position that the falsehood had a material effect upon the person defrauded, in procuring the property, necessarily implies that without it the object of the felon would have failed, he could not have obtained it ; at least, we are disposed to require the false pretences to be so material, that without the existence of their influence upon the mind of the person defrauded, he would not have parted with the property ; and if so, the effect is as injurious, and the offence as great, as if they had been the sole and only inducement in the case. In reason, therefore, as well as upon authority the offence would fall within the statute."

The court accordingly ordered the proceedings to be remitted to the court below, to the end that judgment be rendered against him according to the statute.

On a writ of error by the prisoner, from this decision of the Supreme Court,

The Court of Errors *reversed* the decision. The court held the delivery of the goods upon the facts of the case, to have been complete, and the property vested in the prisoner before he made the false pretences charged in the indictment ; and as *that delivery* was not procured by the means set forth, the charge, as laid, was not proven. The Court declined to give any opinion as to the other points in the case. The Chancellor in his opinion in favor of reversal, says : " Although in point of moral turpitude, there is no essential difference between obtaining the possession of the goods by wilful and deliberate falsehood, in the first instance, and preventing the vendor by similar fraudulent and corrupt means from exercising a legal and equitable right, (of retaking his goods,) it would, I think be going too far in a prosecution for felony to say that the two cases are the same ; and tha the accused may be convicted of the latter offence, under an

indictment, charging him with obtaining the *delivery* of the goods by means of those false pretences."

---

☞ See *People* v. *Johnson*, 12 J. R. 292, where it was held, that if the *credit* be obtained by false pretences, the offence is complete within the statute.